[Crim. No. 6674. Fifth Dist. June 7, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK EDWARD STEVENS, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts II, III, IV and V are not published, as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

**Counsel**

Betty L. Dawson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Anthony L. Dicce and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

**Opinion**

**HANSON (P. D.), Acting P. J.**—Appellant Frank Edward Stevens was convicted of possession of a controlled substance (amphetamines) for sale (Health & Saf. Code, § 11378) and admitted a prior felony conviction (Pen. Code, § 667.5, subd. (b)). We reverse the judgment of conviction because the record shows the court unjustifiably denied appellant's request to relieve his volunteer attorney and appoint new counsel.

*Trial Evidence*

On May 5, 1982, at approximately 9:15 p.m. in Modesto, appellant, driving his 1960 Chevrolet pickup, was stopped by Stanislaus County sheriff's

deputies. Appellant's truck had been under surveillance by Deputy Carrillo for 30 to 45 minutes prior to the stop which was undertaken to conduct a search of appellant and his vehicle for controlled substances.[2] Appellant was and had been the sole occupant of the truck during the period of observation.

Appellant was ordered out, handcuffed and placed in a patrol car while the officers searched the vehicle. Above the transmission housing, between the bucket seats, the officers found a razor blade to which a small amount of whitish powder adhered. Concealed behind the console between the seats was a cigarette package containing nine plastic bags of a yellowish-tan powder. In the glove compartment, the officers found several empty clear plastic bags. The bindles of powder in the cigarette packet, totaling 13.25 grams, were found to contain amphetamine. Carrillo estimated the street value of the amphetamine to be $1,060. A presumptive test was conducted on the residue on the razor blade, with negative results. Carrillo testified that razor blades are commonly employed by users and dealers of amphetamines to "line out" the powder prior to ingesting it, or to mix it with cutting agents in preparation for sale.

### Defense

Appellant testified he did not place the drugs or other paraphernalia in his truck and had no knowledge of their presence. On May 5, 1982, in the early afternoon, he went to see his parole officer, Ron Schumacher, and mentioned that he was going to a friend's house to discuss the possibility of working in Alaska. Thereafter, appellant went to Oakdale to apply for a job at Hunt-Wesson.

At approximately 5 p.m., appellant went to Sandy Bolton's house to meet one of her friends to discuss a job in Alaska. Bolton had been introduced to appellant by his sister a week earlier. Appellant dated Bolton two times but did not know her very well. On the evening of May 5, Bolton borrowed appellant's truck from about 5 to 7 p.m. Appellant testified he had no idea how the drugs came to be in his vehicle ". . . except for I went over to [Bolton's] house and she used my car."[3]

---

[2] State Parole Agent Ronald Schumacher testified at the preliminary hearing that a few days before May 5, 1982, he received information from the Stanislaus County Drug Enforcement Unit (SCDEU) that appellant, a parolee, "possibly was in possession and selling or dealing in controlled substances." Appellant, on parole from a prison term for violation of Penal Code section 261.5 (statutory rape), was subject to a warrantless search condition and Schumacher instructed the SCDEU to carry out a parole search.

[3] During the prosecution case, on cross-examination of Deputies Carrillo and Mann, the court sustained claims of official privilege under Evidence Code sections 1040-1042 to questions concerning the nature of the officers' contacts with Bolton. In a brief hearing out of the presence of the jury, Mann indicated he knew Bolton "[t]hrough past contacts with her over the past couple of years." Mann did not believe he had arrested Bolton, and did not know where she was or how she might be located.

Ronald Schumacher testified that appellant met with him on the afternoon of May 5 and mentioned he was going to talk with someone about going to Alaska to work as a welder.

Victoria Osborn testified she had known appellant for nine years. She never knew appellant to use drugs or to offer them; also, appellant did not smoke cigarettes. After appellant was arrested, he called Osborn and told her to contact Bolton. Appellant did not ask Osborn to contact appellant's sister.

Appellant's attorney argued to the jury that Bolton, the "mysterious missing witness," had intentionally or unintentionally left the drug and other paraphernalia in appellant's truck. "[W]ith the somewhat mysterious missing witness, the absence of control by the defendant of his vehicle for two hours . . . you have plainly a reasonable doubt setting." Counsel also argued it would be illogical to assume appellant put the drugs in the truck, because he had driven in it to visit his parole officer earlier that afternoon.

The district attorney argued that appellant's story was incredible and that the location of the items found in the truck overwhelmingly proved appellant was aware of their presence. The prosecutor repeatedly stated that the officers were entitled to claim a privilege given to law enforcement to withhold information regarding Bolton's police contacts. The district attorney argued if appellant wanted corroboration that another person used his car before the officers searched it, the defense was the logical party to call the "missing witness" into court.

### Discussion

The crucial question is whether appellant, an indigent, was denied the right to effective assistance of counsel by the trial court's refusal of appellant's request to discharge his volunteer attorney and appoint the public defender. Although the circumstances of this case are unusual, well-settled principles mandate an affirmative answer. The violation of appellant's right to counsel requires reversal (see *People* v. *Holland* (1978) 23 Cal.3d 77, 87 [151 Cal.Rptr. 625, 588 P.2d 765]).

### I

Appellant was represented throughout the trial by Attorney Cliff McGhee, who volunteered to represent appellant without compensation because appellant was married to McGhee's sister. McGhee appeared with appellant at the preliminary hearing and at appellant's arraignment in superior court. At the arraignment, the court set a hearing on the alleged prior conviction

for July 21, 1982, a pretrial conference for July 29, and a jury trial date of August 2.

On July 21, the date set for hearing on the validity of the prior, McGhee failed to appear. Appellant immediately told the judge that the attorney was his brother-in-law and, "I would like to have a Public Defender appointed." Further, appellant informed the court he had called his attorney's office "for the last three weeks and he's been gone all the time." The judge refused to substitute counsel, indicating he would not relieve the attorney without notice.[4] The court recessed briefly; when the matter was called again, the judge stated he had been unable to reach appellant's attorney and would continue the hearing one week to attempt to contact McGhee by letter. Appellant mentioned that his wife, McGhee's sister, was present and might have information. Upon the court's inquiry, she responded: ". . . he has a drinking problem. He's not going to show up in court." The hearing continued as follows:

"THE COURT: Is he presently on a toot of some kind?

"MRS. STEVENS: Yes.

"THE COURT: Do you know where he is?

"MRS. STEVENS: No. I can find him, I hope.

"THE COURT: Well, all right. I would appreciate it because before he's relieved as attorney of record, he should at least have the opportunity to appear in court and indicate what his reasons are. We will attempt, however, to notify him and it may well be that this case is going to have to be continued. Certainly would be true if we have to appoint different counsel. But we will continue this until July 28th at 8:30.

"THE DEFENDANT: Your Honor, I am supposed to be back in court on the 29th.

"THE COURT: I know. That's for pre-trial. If we have to appoint new counsel for you, if we don't have Mr. McGhee here and he's not able and prepared to go to trial, unquestionably it will probably mean there will have to be a continuance of the trial date, but that would happen anyway. I'm certain if I appointed the Public Defender there would be no way he would be ready on August 2nd.

---

[4] We can infer from the record that if funds had been available to appellant he would have *retained* other counsel; the brother-in-law attorney was representing appellant without remuneration.

"THE DEFENDANT: I realize that.

"MR. RITCHEY: What was the date, Your Honor?

"THE COURT: July 28th, a week from today."

On July 28, appellant appeared with McGhee. The judge asked McGhee where he had been on July 21. McGhee said he was ill and, although he had asked another attorney to appear for him, there was some confusion about the time of the hearing. The court then inquired whether appellant had discussed his dissatisfaction with McGhee's representation. McGhee responded that appellant wanted to relieve McGhee, and because appellant was indigent the public defender's office should be appointed. The judge stated: "I don't know that I am prepared to do that. The matter is now set for trial, unless there's some good reason for doing it." Asked by the court to state his wishes, appellant said, "Well, I just, rather, you know, get a different lawyer." The judge rejoined, "Well, I am not disposed at this point to grant—to appoint counsel to represent you when you're already represented by an attorney, especially where that would require a continuance of the trial, which it would."

McGhee explained he and appellant did not communicate well and were "diametrically opposed" on the proper strategy, motions and approach to the case. The court indicated it did not consider such differences a ground to relieve McGhee. Appellant stated he felt there was a conflict of interest because appellant was married to McGhee's sister. Appellant alluded to problems with his wife and said, "I just don't think I could get a fair representation." The court concluded it was necessary to hold a *Marsden* hearing (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]), and cleared the courtroom of spectators and the district attorney.

*In camera,* the judge asked appellant to state his concerns "a little more explicitly . . . ." Appellant said McGhee twice had failed to make court appearances, once in municipal and once in superior court. Appellant thought McGhee failed to appear at the latest superior court hearing because McGhee was intoxicated. McGhee denied the latter charge, stating he was ill, but was unable to recall whether or not he was absent in municipal court. McGhee said, "It may be that [appellant's] interests are best served by some other lawyer."

Asked whether there was a family problem that might affect his representation of appellant, McGhee said: "Mr. Stevens recently became my brother-in-law. I found out about the trouble and I volunteered my services as one would for the family. It occurs to me that Mr. Stevens may think be-

cause his wife is my sister that that somehow means that he's going to get less than adequate representation. I am not being paid for the services. I don't know how that influences his thoughts one way or the other." McGhee said he was unaware of a family problem and did not *think* his representation of appellant would be affected by the relationship or lack of a fee. He explained he felt his best efforts would be to negotiate a plea with the district attorney, but recognized he had an ethical duty to assist appellant if the latter chose to go to trial. McGhee did not answer the court's question whether he was prepared to represent appellant at trial "as vigorously and as competently as you possibly can[.]" Instead, he stated, "I think the question before the Court is whether Mr. Stevens figures he will get his representation."

The court then terminated the discussion, ruling: "Well, we have the problem come up many times that a defendant may feel, for one reason or another, . . . dissatisfied with his attorney, but because he may feel dissatisfied, does not mean that there has to be a change of attorneys. There has to be some basic reason for the dissatisfaction that the Court can consider as legally sufficient in making an order relieving counsel and here we have a trial date of August 2nd, and, under the circumstances, I am not going to, on the kind of showing we have had here, I am not going to relieve Mr. McGhee from further representation."

Appellant contends the court's denial of appellant's request for substitution of counsel was reversible error because the court failed to explore the state of mind of appellant's attorney (see *People* v. *Munoz* (1974) 41 Cal.App.3d 62, 66 [115 Cal.Rptr. 726]) and the court abused its discretion in refusing to grant a continuance and to appoint the public defender. Appellant's second contention is correct; appellant's request to discharge McGhee and substitute a new attorney should not have been determined by a *Marsden*[5] standard, and no circumstances justified denial of a continuance for appointed counsel to prepare for trial.

McGhee had not been appointed by the court to represent appellant. Although he was not being paid for his services, McGhee in effect was privately retained by appellant. (See *Magee* v. *Superior Court* (1973) 8 Cal.3d 949, 952 [106 Cal.Rptr. 647, 506 P.2d 1023].)

---

[5]We need not discuss whether the court's inquiry also was deficient under *Marsden* standards. However, the hearings on July 21 and 28 raised questions of divided loyalty from family tensions or the pecuniary interest of an uncompensated attorney which were never satisfactorily answered; the court should have been more careful to protect appellant's right to effective and conflict-free representation. (*Wood* v. *Georgia* (1981) 450 U.S. 261, 272 [67 L.Ed.2d 220, 230, 101 S.Ct. 1097]; *People* v. *Munoz, supra,* 41 Cal.App.3d 62.)

We reject respondent's contention that a *Marsden* analysis governs substitution of appointed for retained counsel. A defendant has a constitutional and statutory right to counsel of his choice. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15; Code Civ. Proc., § 284; *People v. Gzikowski* (1982) 32 Cal.3d 580, 586-589 [186 Cal.Rptr. 339, 651 P.2d 1145]; *People v. Crovedi* (1966) 65 Cal.2d 199 [53 Cal.Rptr. 284, 417 P.2d 868].) We conclude that a defendant's interest in discharging a retained attorney is included within the right to counsel of one's choice, and is subject to the same limitations: "The right to effective assistance of counsel [citations] encompasses the right to retain counsel of one's choice. [Citation.] Though entitlement to representation by a particular attorney is not absolute [citation], 'the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and . . . that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citation.]" (*People v. Gzikowski, supra,* 32 Cal.3d at pp. 586-587.)[6]

 It is undisputed that appellant was indigent; accordingly, the court was under an absolute duty to appoint counsel if appellant was unrepresented. (*Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733].) Had appellant initially entertained the same misgivings about his brother-in-law's ability to represent him adequately and refused when McGhee offered his services, there is no question the court would have appointed counsel. Contrary to the assumption of the trial court and respondent, appellant's initial acceptance of the volunteered representation did not prevent appellant from thereafter terminating the relationship without demonstrating McGhee's incompetence.

*Mandell v. Superior Court* (1977) 67 Cal.App.3d 1 [136 Cal.Rptr. 354] presents an analogous situation. In *Mandell,* the court granted an attorney's petition to compel the superior court to grant petitioner's pretrial motion to be relieved as counsel for a criminal defendant. The attorney had been hired to represent the defendant at the preliminary hearing after which defendant's

---

[6]A recent appellate opinion adopted respondent's position in a case in which the defendant sought to substitute the public defender for retained counsel after trial and prior to sentencing. (*People v. Barnes* (1983) 146 Cal.App.3d 663 [194 Cal.Rptr. 317].) The court stated without analysis or authority that a motion to relieve retained counsel and appoint the public defender is "tantamount to a substitution of appointed counsel . . . ." (*Id.,* at p. 666.) However, *Barnes* is distinguishable based on the stage of the proceedings. Respondent's reliance upon dicta in *People v. Williams* (1970) 2 Cal.3d 894, 906 [88 Cal.Rptr. 208, 471 P.2d 1008], is misplaced; that case also is distinguishable. Defendant Williams was represented by *appointed* counsel and requested new counsel be appointed after trial commenced.

funds were exhausted. When the attorney appeared in superior court and requested to be relieved, the judge refused and informed counsel he was "'on the hook, . . .'" (*Id.*, at p. 3.) Citing Code of Civil Procedure section 284,[7] the appellate court held: "The case law establishes that the court has discretion to deny an *attorney's* request to withdraw where such withdrawal would work an injustice or cause undue delay in the proceeding. [Citations.] But the court's discretion in this area, as elsewhere in the law, is one to be exercised reasonably. Here there was no reason at all for refusing to relieve counsel except the court's notion that counsel had placed himself 'on the hook' by inadvertence at the time of the preliminary." (*Id.*, at p. 4, italics added; see also *People* v. *Prince* (1968) 268 Cal.App.2d 398, 404-406 [74 Cal.Rptr. 197]; *People* v. *Ward* (1972) 27 Cal.App.3d 218 [103 Cal.Rptr. 671].) ▮ Were we to accept respondent's position that appellant could not discharge his retained attorney without showing assistance of counsel to be constitutionally ineffective, we would be affording less deference to the interest of a criminal defendant in defending himself "'in whatever manner he deems best'" (*People* v. *Gzikowski, supra*, 32 Cal.3d 580, 586-587) than to an attorney's interest in obtaining a fee. (See *Mandell* v. *Superior Court, supra,* 67 Cal.App.3d 1.)

The right to effective assistance of counsel is "broader than . . . the bare right to legal representation." (*People* v. *Byoune* (1966) 65 Cal.2d 345, 348 [54 Cal.Rptr. 749, 420 P.2d 221].) Here, the court's refusal to grant appellant's request to discharge McGhee violated appellant's statutory and constitutional rights. ▮ In *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 615 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], the Supreme Court stated that a "[d]efendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible." The court further noted that "the right to chosen counsel extends, insofar as feasible, to the poor." (*Ibid.*, fn. 4, citing *Ingram* v. *Justice Court* (1968) 69 Cal.2d 832, 840-841 [73 Cal.Rptr. 410, 447 P.2d 650, 36 A.L.R.3d 1391].) As a matter of logic and justice, a defendant's constitutionally protected interest in obtaining counsel of his choice encompasses the right to discharge retained counsel regardless of financial ability to hire another attorney. Absent a proper finding of unwarranted disruption of the orderly processes of justice, a court may not force a defendant who timely requests substitution to go to trial represented by retained counsel he no longer trusts.[8]

---

[7]Code of Civil Procedure section 284 provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other."

[8]We note that although the same standard applies on appellate review of claims of incompetency of retained as of appointed counsel, "the fact that counsel is retained remains an

The only grounds for the trial court's denial of appellant's request were its concern that the trial, set for the following week, would be delayed if the court appointed the public defender, and its mistaken belief that appellant was required to show constitutionally inadequate representation by McGhee. "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." (*People* v. *Crovedi, supra,* 65 Cal.2d 199, 207.) As in *People* v. *Gzikowski, supra,* 32 Cal.3d 580, 589, good cause to grant a continuance for the purpose of allowing new counsel to prepare appears in this case as a matter of law.

Appellant brought his difficulties with counsel to the court's attention at the first hearing in superior court following arraignment;[9] counsel did not appear and the matter was continued; the hearing on substitution was held a week later before the same judge. There is not the slightest indication that appellant's purpose in seeking substitution was a desire to delay the proceedings; no previous requests for continuance had been made. Furthermore, the record shows "[n]o prospect of possibly impairing efficient judicial administration . . . sufficient to overcome [appellant's] interest" in appointment of a public defender. (*People* v. *Gzikowski, supra,* 32 Cal.3d at p. 589.) As appellant points out, all the prosecution witnesses were law enforcement officers, and the record contains no evidence that a continuance would prevent their appearance. Indeed, the court had discussed the possibility of a continuance at the hearing on the validity of the prior, and the prosecutor raised no objection.

Under these circumstances, denial of appellant's request to substitute the public defender deprived him of due process and requires reversal. (*People* v. *Gzikowski, supra,* 32 Cal.3d 580, 589; *People* v. *Byoune, supra,* 65 Cal.2d 345, 348; see also *People* v. *Chavez* (1980) 26 Cal.3d 334, 349 [161 Cal.Rptr. 762, 605 P.2d 401].)

II[10]

. . . . . . . . . . . . . . . . . . . . . . .

'important' consideration in measuring the effectiveness of counsel's representation." (*People* v. *Frierson* (1979) 25 Cal.3d 142, 162 [158 Cal.Rptr. 281, 599 P.2d 587].)

[9]At that time, appellant had been unable to contact his attorney for three weeks.

[10]The remaining issues are discussed only for direction on retrial. See footnote 1, *ante,* page 1119.

The judgment is reversed.

Andreen, J., and Hamlin, J., concurred.