[No. B006910. Second Dist., Div. Five. Feb. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN LAU et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, the portion of the opinion to be published follows.

474

COUNSEL

Norman W. de Carteret and Dennis L. Cava, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HASTINGS, J.—This appeal arises out of a confrontation which occurred the late night and early morning of November 6 and 7, 1983, between appellant Marvin Lau (Lau), appellant Joel P. Marenko (Marenko) and the employees and some patrons at the Longhorn Bar in Canoga Park. The only facts which are not in dispute are that Lau and Marenko visited the Longhorn after a day of partying and were both drunk; that one of them had on shorts; and that both were asked to leave by the doorman as their attire

violated the Longhorn's dress code. Before being escorted out, Lau and Marenko scuffled with a patron and the doorman. They returned about 1:30 a.m. with a handgun and an Uzi machine gun. A real donnybrook ensued at the end of which another patron (Hill) and the doorman had numerous gunshot wounds and two police officers, who happened to be driving by, had been shot at but not wounded.[1]

An information was filed on December 7, 1983, and subsequently amended twice to include the counts against both Lau and Marenko. Lau was charged as follows: Counts I and II—attempted murder of Hill and the doorman (Pen. Code, §§ 664, 187),[2] both with intention of inflicting great bodily injury (§§ 12022, subd. (a), 12022.5 and 1203.06, subd. (a)(1)); counts III and IV—assault against Hill and the doorman while personally using a firearm (§§ 245, subd. (a)(2), 12022.5), with intention of inflicting great bodily injury (§ 12022.7) and while released on bail for another offense (§ 12022.1).

Marenko was charged as follows: Count V—attempted murder of Hill with the intention of inflicting great bodily injury (§§ 664, 187, 12022.7); count VI and VII—assault with a deadly weapon on the two police officers (§ 245, subd. (c)). It was further alleged as to each of the three offenses that a principal was armed with a firearm (§ 12022, subd. (a)) and that Marenko personally used the firearm (§§ 12022.5, 1203.06, subd. (a)(1)).

Appellants were represented by the office of the public defender and the office of alternative defense counsel. Because of a conflict, on January 5, 1984, the public defender was relieved from representation of Marenko, and private counsel was appointed. On January 20, 1984, the alternative defense counsel was similarly relieved from representation of Lau, and privately retained counsel was substituted. Both Lau and Marenko made motions to sever which were denied. Lau's motion to appoint a deputy public defender as his counsel made before trial was denied. Lau's attorney was ordered to be in court on a certain date or suffer sanctions. This attorney's motion for mistrial was denied.

Jury selection commenced on June 1, 1984. On June 11, 1984, Lau moved to continue the trial to June 12 due to injuries he sustained while in jail. This motion was granted. Outside the presence of the jury, the trial court ordered Lau to be examined medically and be given appropriate medical treatment. Lau's second motion to further continue the trial on June 12 was denied.

---

[1] A cursory factual summary suffices as the issues on appeal are concerned with procedural determinations and sentencing.

[2] All statutory references are to the Penal Code.

Lau was found guilty of the following offenses: assault with a deadly weapon, a lesser included offense of count I and a violation of sections 664 and 245, attempted voluntary manslaughter, a lesser included offense of count II and a violation of sections 664 and 192, subdivision 1; and assault with a firearm as charged in counts III and IV.

Marenko was found guilty of the following offenses: attempted voluntary manslaughter, a lesser included offense of count V; assault with a firearm on a peace officer, a lesser included offense of count VII and a violation of section 417, subdivision (b). The armed allegation was found to be true as to counts I through VI. The great bodily injury allegation was found not to be true as to counts I through VI.

Probation was denied. Marenko was sentenced to state prison for a total of eight years. The trial court selected the midterm of six years as to count VI (ADW on police officers) as the base term and imposed an additional two years for the use enhancement as to that count. Sentences on the remaining counts were stayed pending completion of the sentence on count VI. Marenko received credit for 383 days (255 days for custody credits and 128 days of good time/work time credits).

Lau was sentenced to state prison for a total of seven years. The trial court selected the upper term of four years as to count IV (assault on Hill) as the base term and imposed two additional two year terms for the use allegation as to counts III and IV; however, the trial court stayed one of the two years of the enhancement as to count IV, pending successful completion of the sentence. Sentences on the remaining counts also were stayed pending completion of the sentence. Lau received credit for 324 days (216 days of custody credits and 108 days of good time/work time credits).

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

*Lau's Request to Discharge Counsel.* ▮ Lau contends that the court's denial of his request to replace his attorney was tantamount to a denial of his right to counsel. The following summarizes the events which led up to Lau's request:

Lau's counsel did not appear in court on the date set for trial and did not respond to the court's telephone messages to him either that day or the following morning. He appeared in court the following afternoon after the trial court finally reached him and ordered him to appear.

*See footnote, *ante,* page 473.

Counsel for Marenko had announced ready and prospective jurors were waiting outside the courtroom. When asked what course he wished to follow, Lau's counsel stated that he was under the impression that a disposition could be reached. The deputy district attorney, however, responded that this was impossible as he would accept a disposition as to both defendants only, and Marenko refused to enter such a disposition.

Counsel for Lau apologized for having been absent and explained that he had been "mixed up" and working in another court on the preceding day. He informed the court that he had analyzed the evidence objectively and hoped to dispose of it. When the court explained that it would only accept a plea to all the charges, counsel sought a recess to confer with the prosecutor.

After a recess to discuss the matter, Lau's counsel stated that Lau felt he could not represent him because he felt Lau was guilty and that Lau desired to substitute the public defender as counsel. The court cleared the court of the prosecutor and all spectators and asked Lau to explain his reasons. Lau responded that there was a "conflict of interest" between him and his attorney in that his attorney believed it was in his best interest to plead whereas Lau did not feel he was guilty. Lau also noted that he now lacked the funds with which to pay his attorney, that he felt his counsel (an attorney with the office of alternative defense counsel) at the preliminary hearing had done a better job than his trial counsel, and that he did not think that this attorney would fully represent him at trial.

The trial court explained that counsel was required to advise his client according to his judgment and to represent him quite apart from the payment issue. Lau's motion to substitute counsel was denied because there were no legally sufficient reasons supporting the motion, particularly given the late date it was being made.[3] Lau's counsel assured the trial court that he would defend his client as best he could, and the court acknowledged that counsel would not have been doing his job if he had not expressed his evaluation of the likelihood of prevailing.

Respondent asserts we can infer from the court's minute order, dated January 20, 1984, that Lau's counsel was appointed; therefore, it was within

---

[3]The court addressed Lau as follows: "You have a right to tell me . . . outside the presence of the other defendant, Mr. Marenko, and outside the presence of the District Attorney if you wish to. Because it's possible that statements you make may involve—unless you give me adequate reasons at this late date for substituting someone in the place of Mr. Morales, I'm not going to allow it, because we are ready to go to trial. [¶] This is very last minute. We have a jury waiting outside the door, literally, so you have to give me legally sufficient reasons to justify a substitution at this late date."

the court's discretion to determine whether counsel should have been re-placed; and that a *People* v. *Marsden* analysis is appropriate.[4] We do not find the record supports such a conclusion. One of the reasons Lau pro-pounded as a basis for his request to substitute counsel was that he could no longer pay. If the court had appointed his counsel, Lau would not have been paying him. Only retained counsel is paid by a defendant, and when substitution of *retained* counsel is sought, *Marsden* is not controlling. In-stead we look to the principles articulated in *People* v. *Stevens* (1984) 156 Cal.App.3d 1119 [203 Cal.Rptr. 505].

■ "A defendant has a constitutional and statutory right to counsel of his choice. [Citations.]" (*Stevens, supra,* at p. 1127.) His or her interest in discharging a retained attorney is included within the right to counsel of one's choice, and is subject to the same limitations. (*Ibid.*) " 'The right to effective assistance of counsel [citations] encompasses the right to retain counsel of one's choice. [Citation.] Though entitlement to representation by a particular attorney is not absolute [citation], "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources—and . . . that desire can constitutionally be forced to yield only when it will result in significant prejudice to the defendant himself or in a disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." [Citation.]' " (*Ibid.,* quoting *People* v. *Gzikowski* (1982) 32 Cal.3d 580, 586-587 [186 Cal.Rptr. 339, 651 P.2d 1145].)

In *Stevens,* two weeks before trial the defendant sought a substitution of the public defender for retained counsel after counsel had missed two ap-pearances, defendant had unsuccessfully attempted to reach him for three weeks, and there was evidence counsel had a drinking problem. The court denied defendant's request, but conducted a *Marsden* hearing one week later when defendant repeated his request, and counsel was present. Finding no legally sufficient reason to relieve counsel and unwilling to continue the trial, the court denied defendant's request.

The appellate court reversed, rejecting the contention that a *Marsden* anal-ysis would govern substitution of appointed counsel for retained counsel. (*Stevens,* 156 Cal.App.3d at p. 1127.) The court relied on the language of *People* v. *Gzikowski,* quoted above, and held that "[a]bsent a proper finding of unwarranted disruption of the orderly processes of justice, a court may

---

[4] *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] mandates a court hearing to determine whether a defendant's appointed counsel offers constitutionally inadequate representation when defendant requests substitution of appointed counsel.

not force a defendant who *timely* requests substitution to go to trial represented by counsel he no longer trusts." (*Stevens,* at p. 1128, italics added.)

The condition precedent to consideration of the *Stevens* factors is that the request for substitution be timely made. In *Stevens,* defendant had made his initial request two weeks before trial was scheduled to begin, when counsel had failed to appear at his pretrial conference.  ▉  In the instant case, Lau's request was made literally the moment jury selection was to begin. As evidenced by the court's comments, quoted in footnote 3, *ante,* the timeliness, or lack thereof, of the request properly concerned the court.

Recognizing the importance of defendant's right to counsel of his choice, however, the court did not rely solely on the untimeliness of Lau's request when it denied Lau's request. Faced with the fact that codefendant Marenko's counsel had announced ready to proceed and with the untimeliness of Lau's request, the court nonetheless considered Lau's remarks regarding his disagreement with counsel. Counsel admitted being angry with Lau, but assured the court he would defend Lau to the best of his abilities. The court responded, "I know you will. It is with that knowledge and belief on my part that I deny the motion. The basic problem here I think is one of Mr. Lau disagreeing with you concerning your analysis and evaluation of the case against him, and that is understandable. I am not saying you are right or he is right.

"Obviously, I don't know the facts of this case, but it is my sincere belief you would not be doing your job unless you expressed your feelings concerning your evaluation of the likelihood of his prevailing in this case to him and gave him the benefit of your best advice.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

". . . it's a difference of opinion, an honest difference of opinion, but that does not justify a substitution of attorneys, particularly in a two defendant case at this point in time.

"The reasons given are not legally sufficient and the motion has not been timely made."

We find no error in the court's consideration and denial of Lau's request, especially given its untimeliness. (*People* v. *Courts* (1985) 37 Cal.3d 784, 793, fn. 4. [210 Cal.Rptr. 193, 693 P.2d 778].)

. . . . . . . . . . . . . . . . . . . . . .*

The judgment is affirmed as to both Lau and Marenko.

Feinerman, P. J., and Ashby, J., concurred.

Appellants' petitions for review by the Supreme Court were denied May 1, 1986.

---

*See footnote, *ante,* page 473.