[No. H001734. Sixth Dist. Dec. 30, 1986.]

TOREY T. SOUTH, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Torey T. South, in pro. per., for Petitioner.

Donald L. Clark, County Counsel, and Brian L. Carr, Deputy County Counsel, for Respondent.

John K. Van de Kamp, Attorney General, and Linda Ludlow, Deputy Attorney General, for Real Party in Interest.

## OPINION

**AGLIANO, P. J.**—Petitioner/defendant Torey T. South (South) seeks a writ of mandate directing respondent court to appoint an attorney to represent him at public expense.[1] We conclude relief is not merited and deny the petition.

### Facts

On December 27, 1984, South, a soldier in the United States Army, was charged with armed robbery. Thereafter, the municipal court referred him to the Santa Clara County Public Defender's office for possible representation, but his application was denied because his income exceeded the eligibility standard set by the county.[2] Thereafter, South retained an attorney, Mr. Robert Kiernan (Kiernan). He paid Kiernan $2,300.

In October 1985, South filed a "Marsden" motion[3] to discharge Kiernan and for appointment of the public defender. The motion was denied. The record does not disclose the basis for South's motion. Thereafter, South reapplied to the public defender's office for representation. His application was again denied.

In January 1986, South brought a second "Marsden" motion for the same purpose. At a hearing in chambers, South conceded that Kiernan had "a good track record" but expressed fear about going to trial because he had not seen any "progress" in his case. South stated that Kiernan had not consulted with him since October or notified him about changes in court dates; that Kiernan

---

[1]South specifically requests either that a certain named attorney be appointed or that the appointment be made through the office of the conflicts administrator as opposed to the public defender's office.

[2]South claims that his application was denied because he was wearing a uniform. However, in a declaration in opposition to the petition, Mr. Julio Garcio states that South's ineligibility for a public defender was based on an evaluation of his financial circumstances and that South's uniform did not affect his conclusion.

[3]*People* v. *Marsden* (1970) 2 Cal.3d 118, 124 [84 Cal.Rptr. 156, 465 P.2d 44].

failed to seek exoneration of bail despite South's urging;[4] that Kiernan had not applied to the county for payment of investigatory and expert witness fees that South was unable to afford; and their lack of communication had caused South to lack confidence in Kiernan. He also stated that he could no longer afford Kiernan.

Kiernan replied that (1) South had raised the same points in his first unsuccessful "Marsden" motion; (2) he had tried diligently on many occasions to communicate with South but was unable to; (3) South was not an easy person to deal with, but Kiernan had performed adequately; (4) he did not like going to trial without having been paid his full fee, but he realized his ethical obligation and was prepared to zealously represent South; and (5) he intended to move to ask the county to help pay investigative and expert witness costs. Kiernan said he hoped South would pay him, but whatever the court decided was fine.

South responded that although he did not think Kiernan would do anything directly against his interests, he would rather represent himself.

The court concluded that South had failed to provide sufficient justification to appoint the public defender in lieu of Kiernan and denied the motion. The court stated, however, it would hear a *Faretta* motion[5] if South desired to represent himself.

Thereafter, South complained to the Santa Clara County Board of Supervisors (Board) about not being afforded public defender services. After listening to him, the Board recommended that the county conflicts administrator (Administrator) reevaluate South's application, and "ordered" that if he qualified, he should be afforded a public defender.

The Administrator then concluded that South was only "marginally eligible" for the public defender because of his election to live off base and pay $400 per month in rent rather than use free on-base housing. The Administrator submitted the matter to respondent court for its independent determination of South's eligibility.

In February 1986, the Administrator, county counsel, and South met in chambers to discuss the Board's order. The court questioned the Board's involvement in a judicial matter. Nevertheless, it found on the merits that

---

[4]Apparently a motion was made but denied.

[5]*Faretta* v. *California* (1975) 422 U.S. 806, 807, 819-821 [45 L.Ed.2d 562, 566, 572-574, 95 S.Ct. 2525].

South was still ineligible. The court advised South that he could reapply to the public defender if his financial circumstances changed. South protested that he was eligible and then asked if he could represent himself. The court set a hearing for a *Faretta* motion.

On March 6, 1986, the motion was heard in chambers. South stated that he wanted to discharge Kiernan and represent himself. The court questioned South about his age (23) and education (2 years college equivalent). The court then told South that (1) self-representation is almost always "unwise"; (2) his defense may be self-defeating; (3) he would receive no special indulgence and would have to follow technical rules of evidence and procedure; (4) because he was abandoning private counsel, he would not receive a county-paid "advisor," but could receive expert witness fees; and (5) the case was serious and involved ineligibility for probation and a maximum prison term of seven years. The court also said that he would grant a continuance if one were needed. Finally, the court said self-representation was "foolhardy" and advised South to stick with Kiernan. For the record, Kiernan stated that he opposed the motion.

South said that his motion was not a ploy for time and though he understood what the court had said, he had "no other choice" but to represent himself.

The court discharged Kiernan and permitted South to represent himself.

*Discussion*

We first assume for the sake of argument, although by no means so deciding, that South's financial condition entitled him to the services of the public defender. South contends that the court abused its discretion in failing to discharge Kiernan and appoint a public defender. Implicit in his claim is an assertion that he would not have sought to represent himself if the public defender had been appointed.

In *People* v. *Barnes* (1983) 146 Cal.App.3d 663 [194 Cal.Rptr. 317], the court determined that a motion to discharge retained counsel and substitute the public defender was "tantamount to a substitution of appointed counsel," i.e., a "Marsden" motion, and was governed by the same standards. (*Id.* at p. 666.) ■ Under such circumstances, "[i]t is a matter of judicial discretion whether to substitute appointed counsel in the absence of a sufficient showing that a defendant's right to counsel would otherwise be substantially impaired. [Citation.] A disagreement as to tactics and strategy is not suffi-

cient reason to require a substitution of counsel. [Citations.] And a defendant cannot compel the substitution of counsel through his own intransigence and failure to cooperate. [Citation.] What is required of a trial court when a request for substitution is made is that the court allow the defendant to explain his reasons and then exercise judicial discretion. [Citation.] Where the court permitted such an explanation, the decision of the court will not be reversed in the absence of an abuse of discretion. [Citation.]" (*Id.* at pp. 666-667.)

We note that the court in *People* v. *Stevens* (1984) 156 Cal.App.3d 1119 [203 Cal.Rptr. 505] expressed a contrary opinion. There, the court concluded that a defendant's constitutional right to counsel of his choice "encompasses the right to discharge retained counsel regardless of financial ability to hire another attorney" and, therefore, that a court may not force a defendant who requests substitution to go to trial represented by counsel he no longer trusts unless such a substitution is prejudicial to defendant or disrupts the orderly processes of justice. (*Id.* at p. 1127-1128.)

However, we disagree with *Stevens*'s view. We do not believe that a defendant's motion to discharge retained counsel in such circumstances should be decided in a vacuum. The *Stevens* court itself recognized that a court could deny a motion to discharge if granting it would cause significant prejudice to the defendant or an unwarranted disruption of the orderly processes of justice. (156 Cal.App.3d at pp. 1127, 1128.) Clearly, then, a court must concern itself with who will be representing the defendant if present counsel is discharged. Where, as here, a motion to discharge is accompanied by a request for the appointment of the public defender we consider the approach adopted by the court in *Barnes* to be the proper one.

██ Therefore, applying *Barnes* to this case, we conclude that South bore the burden of showing that Kiernan's continued representation would substantially impair his right to counsel. South's principal reasons for discharging Kiernan were that he had seen no progress in his case, Kiernan had not consulted with him, and his financial circumstances reduced Kiernan's incentive to provide zealous representation. The trial court did not believe defendant or deem his reasons sufficient cause to substitute the public defender. South failed to demonstrate that his defense had been harmed or even retarded or that his right to counsel had been negatively affected. He does not claim that exculpatory evidence was lost, defense witnesses became unavailable, or that it was too late to engage expert witnesses. Although there had been some delay in the case, South demonstrated no prejudice from it. Indeed, his own efforts to obtain different counsel, as much as anything else, stalled the preparation of a defense.

South's claim that his financial circumstances would reduce the quality of Kiernan's representation need not have been credited since it appears to be wholly speculative. Mere speculation that Kiernan would render inadequate service is insufficient to establish that his right to counsel has, in fact, been substantially impaired. (See, e.g., *People v. Goldstein* (1952) 130 Cal.App.3d 1024, 1030 [182 Cal.Rptr. 207] [speculative basis of impairment not sufficient reason to substitute counsel].) Moreover, in light of Kiernan's commendable observance of his ethical and professional responsibilities to South as his attorney (see *People v. Brown* (1986) 177 Cal.App.3d 537, 544-545 [223 Cal.Rptr. 66]; *Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1143 [217 Cal.Rptr. 89]; Bus. & Prof. Code, § 6068), his willingness to zealously defend South, regardless of South's financial condition, and his readiness to file various motions on South's behalf, the trial court could properly find that South's professed fear was groundless.

In short, we fail to see any abuse of discretion in the denial of South's motion to discharge Kiernan and substitute the public defender. (*People v. Barnes, supra,* 146 Cal.App.3d 663, 667.)

■   Other than arguing that he was entitled as a matter of law to a public defender, South claims no error in the granting of his *Faretta* motion. In that context, South was not required to establish that Kiernan's representation was inadequate or even that he was dissatisfied with Kiernan. Rather, South exercised his constitutional right of self-representation. (*People v. Windham* (1977) 19 Cal.3d 121, 124 [137 Cal.Rptr. 8, 560 P.2d 1187].)

A trial court "must permit a defendant to represent himself upon ascertaining that he has voluntarily and intelligently elected to do so, irrespective of how unwise such a choice might appear to be." (*Id.* at p. 128.)

Our review of the *Faretta* hearing reveals that the trial court thoroughly discussed the matter with South and that properly faced with a choice between Kiernan and himself, South voluntarily and intelligently elected self-representation. (Cf. *People v. Lopez* (1977) 71 Cal.App.3d 568, 571-574 [138 Cal.Rptr. 36].)[6]

---

[6]In *Lopez, supra,* the court set forth the sort of advisements that would insure that a choice to represent oneself is made intelligently and voluntarily. Of these, one is that the defendant be informed "of the alternative, i.e., the right to counsel. He should be made aware of just what that means including, of course, his right to court-appointed counsel at no cost to himself." (71 Cal.App.3d at p. 573.) Clearly, such an advisement is not necessary where, as here, a defendant intentionally discharges retained counsel, who is ready, willing, and able to represent the defendant.

The petition for writ of mandate is denied, and the alternative writ is discharged.[7]

Brauer, J., and Simmons, J.,* concurred.

---

[7]After issuance of the alternative writ, oral argument was set for August 14, 1986. At county counsel's request, argument was continued to September 18. Two weeks before argument, South requested a continuance due to an alleged medical emergency that prevented him from preparing a written reply to county counsel's opposition to his petition. The request was not served on county counsel, and there was no description, explanation, or verification of any sort concerning South's reason for a continuance. (See Cal. Rules of Court, rule 41.) The request was denied. However, South moved for reconsideration, submitting a doctor's letter which stated that South had not been feeling well and on August 27, was hospitalized for an undescribed "acute medical emergency." Although South was discharged on August 29, the doctor stated that South was unable to concentrate.

Although none of South's or his doctor's statements were supported by a proper affidavit, we granted the motion and reset oral argument for October 16. Thereafter South submitted no reply brief.

On October 15, the day before oral argument, South's wife wrote to the court requesting another continuance because South was allegedly unable to proceed. She attached a short letter from the Chief of Community Health Services at Fort Ord stating that events during the previous week had caused South "considerable emotional stress" and though the symptoms had lessened, they affected South's ability to sleep and concentrate. The "events" were not disclosed. Mrs. South also included a copy of an "Individual Sick Slip" dated October 14, which, she asserts, indicates that South was not authorized to leave his quarters. The document was not authenticated and does not say that South was confined in any way.

We heard oral argument as scheduled on October 16. Neither South nor a representative deigned it necessary to attend. At that time, we denied the request for a continuance. South had not personally indicated an inability to attend argument, and the vague, conclusory, unverified statements concerning South's mental condition and the document purporting to confine South to his quarters fail to justify another continuance.

We have had the benefit of South's petition. In denying the petition, we, in effect, affirm respondent court's rulings. Doing so is clearly permissible despite South's absence from oral argument. (See Pen. Code, § 1253.)

*Assigned by the Chairperson of the Judicial Council.