[No. A053335. First Dist., Div. Two. June 2, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES TURNER, Defendant and Appellant.

**COUNSEL**

Geoffrey Rotwein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Stan Helfman, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

SMITH, Acting P. J.—James Turner appeals from an order revoking probation. He asserts that the trial court erred by relying on *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44] (*Marsden*), to deny his request for new counsel. He contends that his counsel, a staff attorney in a neighborhood legal services clinic, should have been viewed as "retained" counsel subject to discharge without cause under *People* v. *Ortiz* (1990) 51 Cal.3d 975 [275 Cal.Rptr. 191, 800 P.2d 547] (*Ortiz*). We find no error, and affirm.

### BACKGROUND

Defendant was convicted in February 1987 of selling narcotics in violation of Health and Safety Code section 11352. He was placed on probation for five years.[1] In October 1990 the district attorney moved to revoke probation, based upon an incident in which defendant reportedly threatened a peace officer.[2] The petition was later augmented to reflect defendant's arrest in the company of an escapee from the Marin County jail. The two men were apprehended in a stolen car, on the floor of which police found rock cocaine crystals. The men had been staying in a motel room, in which police found the fruits of a strong-arm robbery at the San Francisco Airport.[3]

At the initial hearing on November 21, 1990, the court appointed the public defender to represent defendant. On December 13, at defendant's request, the court ordered Jay Rorty substituted as counsel for defendant. Mr. Rorty was employed by the Bayview Hunter's Point Community Defender Program, a nonprofit corporation funded by the City and County of San Francisco using federal block grants. The program had contracted with the city to provide community legal services including direct representation in felony cases. Defendant appears to concede on appeal that he did not pay Mr. Rorty.

The matter came on for a contested evidentiary hearing on February 8, 1991. When the case was called on that date, defendant expressed dissatisfaction with Mr. Rorty's representation. In a hearing out of the presence of

---

[1]The petitions to revoke probation both recite that appellant was originally placed on probation for three years. If this were correct it would appear that appellant's probation had been completed at the time of the events underlying the revocation. However, we accept the five-year figure, which is used by the trial court in the reporter's transcript and by both parties in their statements on appeal.

[2]An earlier petition to revoke, of no particular relevance here, resulted in a jail sentence.

[3]There was no evidence linking defendant to the actual commission of the auto theft or the strong-arm robbery.

the prosecution, defendant indicated that he had wanted Rorty to make a "*Pitchess* motion," i.e., to compel disclosure of any citizen complaints against the police officers involved in this case (see *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]), because he felt that the police reports included untrue statements. Rorty had declined, stating that such a motion would not lead to the disclosure of relevant or admissible evidence. Defendant had also wanted Rorty to seek to disqualify the judge under Code of Civil Procedure section 170.6, but Rorty had replied that he did not believe sufficient grounds existed for such a motion. Defendant also alluded to unspecified remarks by counsel during discussions in chambers, to conduct by counsel's investigator in apparently not serving subpoenas on unspecified witnesses, and to a two-month delay in obtaining copies of certain police reports.

The court denied the request to relieve Rorty, observing that any information produced in response to a *Pitchess* motion would not be admissible and that any disqualification motion would be untimely. The court concluded, "[I]t seems that the only purpose of this motion is to put the hearing over because all of the witnesses are present . . . . So the Marsden motion will be denied."

Evidence was then received, at the conclusion of which the court found a probation violation and lifted the stay of execution, thus requiring defendant to serve the five-year sentence originally imposed. Defendant brought this appeal.[4]

### ANALYSIS

Defendant contends that he was deprived of his Sixth Amendment right to counsel when the trial court refused to remove Mr. Rorty and substitute the public defender. He asserts that: (1) Rorty was not "appointed" counsel but was more akin to "retained" counsel; (2) the trial court therefore erred in relying on *Marsden, supra*, 2 Cal.3d 118, which delineates the right of an indigent defendant to substitute *appointed* counsel; (3) defendant had a presumptive right to replace his attorney, under *Ortiz, supra*, 51 Cal.3d 975, and *People* v. *Stevens* (1984) 156 Cal.App.3d 1119 [203 Cal.Rptr. 505].

None of these premises is satisfactorily established. First, we cannot say on this record whether Mr. Rorty was "appointed" or not. All the record shows is that on December 13, 1990, the court permitted a "substitution of attorneys." There is no record support for defendant's factual assertions,

---

[4]The order revoking probation is appealable (Pen. Code, § 1237, subd. (b); 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, § 3168, p. 3925), and the appeal is timely.

such as that the community defender "never" appears "by way of appointment." Defendant implies that it is respondent's burden to show an appointment, but we disagree; error is never assumed and must be affirmatively shown.

Second, the meaning of "appointed" in the present context is somewhat unclear. As defendant would have it, counsel is only "appointed" if he or she comes within the statutes governing the assignment of counsel for indigent defendants (see Pen. Code, §§ 859, 987-987.9) or establishing public defender offices (Gov. Code, § 27700 et seq.). Defendant asserts that since the community defender is not "assigned" as contemplated in those statutes (a premise we accept for purposes of discussion), it is not "appointed" for purposes of *Marsden.*

We reject this reasoning. As here pertinent the cited code sections operate only to establish *mechanisms* by which counsel may be systematically assigned and compensated. Such technical matters are far removed from the issue we address, i.e., what standards govern the removal of counsel at defendant's request, when the attorney is neither a public defender nor private counsel compensated from public funds, but nonetheless serves at public expense? We believe such an attorney is the equivalent of "appointed" counsel for purposes of ascertaining the scope of the defendant's right to substitute counsel. We also note that on the facts shown here the court would properly have denied the requested substitution even if counsel had been privately retained.

We begin by examining the rule governing substitution of appointed counsel, for without acknowledging its purpose we cannot properly ascertain its scope. ■ Generally, where a defendant has retained counsel of his or her choice, the attorney may be discharged at any time with or without cause. (*Ortiz, supra,* 51 Cal.3d at p. 983.) This rule is subject to other exceptions, discussed in more detail below, but we are concerned here with the exception, reaffirmed in *Marsden,* concerning court-appointed counsel: where the defendant is represented by such counsel, even a timely request for substitution need not be honored unless it appears that denial would substantially impair the defendant's right to the assistance of counsel. (*Marsden, supra,* 2 Cal.3d at p. 123, and cases cited.)

The reasons for requiring a defendant to show good cause for replacing appointed counsel were discussed in *Ortiz, supra,* 51 Cal.3d at p. 986. Substitution of appointed counsel threatens to waste public resources by creating "duplicative representation and repetitive investigation at taxpayer expense." (*Ibid.*) Free substitution as of right would also present an "undesirable opportunity to 'delay trials and otherwise embarrass effective prosecution' of crime." (*Ibid.,* quoting *People* v. *Williams* (1970) 2 Cal.3d 894, 906

[88 Cal.Rptr. 208, 471 P.2d 1008].) Denial of substitution presumably will not deprive the defendant of effective counsel, because he or she "will continue to be represented by an attorney at public expense." (*Ibid.*) This is in sharp contrast to the facts in *Ortiz*, where the defendant was forced to trial with a reluctant, unpaid private attorney. The court noted a serious risk that the client in such a case would only " 'get what he paid for.' " (*Id.*, at p. 985; see *People* v. *Stevens, supra*, 156 Cal.App.3d 1119 [error not to substitute public defender for defendant's wife's brother who served without compensation and displayed lack of diligence and reluctance to continue].)

 Mr. Rorty's status and circumstances here were equivalent to those of "appointed" counsel in all relevant respects. He was paid, ultimately, from public funds.[5] This meant that substitution would entail duplicative public expenditures. It also meant that defendant would continue to be represented by a paid attorney, and not an involuntary pro bono attorney, whatever the outcome of his motion. To permit defendants to freely dismiss attorneys such as Mr. Rorty and to reappoint the public defender's office without a showing of cause would present an undue opportunity to delay proceedings or otherwise embarrass prosecution. For all practical purposes, then, Mr. Rorty stood in the same position as any other publicly funded defense attorney, and no reason appears for treating him (or defendant's request to remove him) any differently.[6]

Furthermore, the facts here would not support a different result even if Mr. Rorty were viewed as retained. A trial court need not permit a defendant to discharge retained counsel where: (1) it would cause " 'significant prejudice' " to the defendant, e.g., by forcing him to trial without adequate representation; or (2) it is untimely and would "result in . . . 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' " (*Ortiz, supra*, at p. 982, quoting *People* v. *Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868].) Of course, the defendant's right to effective counsel need not always yield to judicial efficiency; courts must demonstrate "a 'resourceful diligence directed toward the protection of [the right to counsel] to the fullest extent

---

[5]Mr. Rorty's salary had its origins in federal block grants distributed to the employing entity through an agency of the City and County of San Francisco. Attorneys serving in the public defender's office or appointed under the Penal Code are typically paid from state and local budgets. We see no significance in the location of the affected government coffer, provided the ultimate source of the attorney's compensation is tax dollars.

[6]Indeed defendant was seeking his *third* publicly funded attorney, since he had been represented by the public defender's office before Mr. Rorty's substitution. This further distinguishes *Ortiz, supra*, where the court observed that the defendant was "requesting appointed counsel for the first time," and should therefore "be treated no differently from a defendant who qualifies for representation by, and seeks appointment of, the public defender at the outset of the proceedings against him." (51 Cal.3d at p. 986.)

consistent with effective judicial administration.'" (51 Cal.3d at pp. 982-983, quoting *Crovedi, supra,* 65 Cal.2d at p. 209.) However, a court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. (See *People* v. *Lau* (1986) 177 Cal.App.3d 473, 479 [223 Cal.Rptr. 48], review den. [motion to replace retained counsel on day of trial properly denied, where court confident counsel would adequately represent defendant].)

Here defendant sought to replace his attorney on the day of trial.[7] This meant that the request could not be granted without causing a significant disruption, i.e., a continuance with the attendant further inconvenience to witnesses and other participants.[8] The question then became whether such a disruption was reasonable under the circumstances. The trial court properly weighed the considerations relevant to this issue. After allowing defendant to explain his dissatisfaction with Mr. Rorty, the court found no adequate basis for permitting the disruption of a continuance. Defendant was unable to offer any countervailing consideration, and in particular failed to present any coherent reason for doubting the competence, diligence, motivation, or commitment of his existing counsel. Indeed, the vagueness of his complaints supported the court's apparent finding that the motion was motivated not by any genuine dissatisfaction with counsel but by a desire to delay the trial.

Whatever defendant's subjective intent, the substitution of counsel on the morning of trial would certainly have led to a continuance, and the trial court properly found that such a disruption would be unreasonable under the circumstances. We find no error.

---

[7]The extreme lateness of the request further distinguishes *Ortiz, supra,* where the defendant first sought new counsel seven months before the case was "tried." (51 Cal.3d at pp. 980-981.)

Furthermore, the adequacy of the representation was in serious doubt. The case was not "tried" at all in the popular sense, but submitted to the court on the transcripts of earlier proceedings. (51 Cal.3d at p. 981.) The Supreme Court was sensitive to the possible connection between this streamlined procedure and counsel's apparent reluctance to continue without compensation. "Without evaluating the wisdom of defendant's *Bunnell* plea," wrote Justice Mosk, "we nevertheless recognize that one possible result of requiring an unwilling attorney to represent a defendant without compensation is that 'Some attorneys may find shortcuts particularly seductive . . . .'" (*Id.,* at p. 985, quoting Gilbert & Gorenfeld, *The Constitution Should Protect Everyone—Even Lawyers* (1984) 12 Pepperdine L.Rev. 75, 88.) There is no hint of any similar shortcuts in the present case.

[8]Defendant asserts that the trial court failed to make a finding that the requested substitution would disrupt the judicial process. We reject this contention because: (1) it was perfectly obvious that if substitution were allowed the matter would have to be continued; (2) the court explicitly alluded to that fact; and (3) the court expressly refused to permit such a continuance. The court's words were not deprived of their full meaning simply because they alluded to defendant's possible motives for seeking the substitution.

The order appealed from is affirmed.

Benson, J., and Peterson, J., concurred.