Filed 4/29/13  P. v. Martinez CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER J. MARTINEZ,<br><br>        Defendant and Appellant. | B240574<br><br>(Los Angeles County<br> Super. Ct. No. MA050528) |

        APPEAL from the judgment of the Superior Court of Los Angeles County. Hayden Zacky, Judge.  Affirmed.

        Alan Macina, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Louis W. Karlin, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * * * *

Defendant and appellant Christopher J. Martinez was convicted by jury of three counts of having sex with a child under the age of 10 (Pen. Code, § 288.7, subd. (a)) and one count of committing a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)). Defendant was sentenced to an aggregate state prison term of 83 years to life. Defendant contends on appeal the trial court committed reversible error by refusing his request, on the morning of the sentencing hearing, to discharge his retained counsel and have substitute counsel appointed. Defendant also argues he was denied the effective assistance of counsel because his attorney failed to move to sever the trial of the charges involving the two separate victims. We find no error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2009, defendant was in a relationship with Sylvia M. (mother) and had fathered two of her children, a son and a daughter (J.M.). Mother had another daughter (A.G.) from a previous relationship.

In the summer of 2010, J.M., who was 11 years old at that time, was staying with her godmother. During this visit, J.M. told her godmother that defendant (her father) had sexually abused her. The godmother and her husband took J.M. to the sheriff's department to report the abuse. J.M. was interviewed by Detective Eliott Uribe, a then-19-year veteran of the department.

During the interview, J.M. said defendant first forced himself on her in 2009 when she was nine years old. Defendant would have sex with J.M. and then tell her to shower after he was done. It happened multiple times, including at least two or three times when he picked her up from school and took her to a local motel.

Detective Uribe also interviewed J.M.'s older half-sister, A.G., as part of his investigation. A.G. disclosed to him that, in 2002 when she was about nine years old, defendant (her stepfather) had touched her vagina once, and several months later, unzipped his pants and tried to put his penis in her face or into her mouth, but she kept turning her head away and he eventually stopped.

Defendant was charged by information with three counts (1, 2 and 4) of having sex with a child under the age of 10 (victim J.M.) in violation of Penal Code section

2

288.7, subdivision (a), and one count (3) of committing a lewd act on a child under the age of 14 (victim A.G.) in violation of Penal Code section 288, subdivision (a). Defendant pled not guilty, and the case proceeded to a jury trial in March 2012.

Defendant was represented by retained counsel, Walter Urban. During trial, the jury heard testimony from both victims, their mother, Detective Uribe, a defense medical expert, and several other witnesses. Both J.M. and A.G. attested in detail to the sexual assaults by defendant and were extensively cross-examined by defense counsel. On March 22, 2012, the jury found defendant guilty on all four charges. Following the reading of the verdicts, the court accepted a waiver of time from defendant as to sentencing and scheduled the sentencing hearing for April 13, 2012.

On April 13, 2012, the prosecutor, one of the victims (J.M.), and Michael Rodriguez from the Sexual Assault Response Service were present at the sentencing hearing and ready to proceed as scheduled with the reading of the victim impact statements and sentencing. At the start of the hearing, defendant's attorney advised the court that defendant had expressed "a desire to have me removed from the case," and for the court to appoint a public defender to represent defendant. Defendant's attorney did not say he was unprepared to proceed with sentencing, nor did he state why defendant wanted to discharge him or why he wanted a public defender to represent him. The court denied the request as untimely and also noted that defense counsel had done a good job representing defendant at trial.

The court then proceeded to impose sentence. Defendant was sentenced to an aggregate state prison term of 83 years to life calculated as follows: the upper term of eight years on count 3, the base count, plus consecutive terms of 25 years to life on each of counts 1, 2 and 4. The court awarded defendant a total of 616 days of custody credits, and imposed various fees and penalties.

This appeal followed.

3

# DISCUSSION

## 1.     The Request to Discharge Counsel

Defendant contends he is entitled to an automatic reversal for a violation of his Sixth Amendment right to counsel because the trial court denied his request to discharge his retained attorney and have a public defender appointed to represent him at sentencing.  We disagree.

It is well-established that a criminal defendant has the right to timely seek substitution of *appointed* counsel based upon a showing of inadequate representation or an irreconcilable conflict.  (*People v. Marsden* (1970) 2 Cal.3d 118, 123-125 (*Marsden*); *People v. Ortiz* (1990) 51 Cal.3d 975, 983(*Ortiz*).)  However, the question of competence of counsel is *not* a factor in resolving a defendant's request to discharge *retained* counsel.  "In contrast to situations involving appointed counsel, a defendant may discharge his retained counsel of choice at any time with or without cause."  (*People v. Lara* (2001) 86 Cal.App.4th 139, 152 (*Lara*), citing *Ortiz*, *supra*, 51 Cal.3d at p. 983.)  The right to discharge a retained attorney with or without cause also applies after conviction.  (*People v. Munoz* (2006) 138 Cal.App.4th 860, 869 (*Munoz*).)

However, the right to discharge retained counsel is *not absolute*.  (*Ortiz*, *supra*, 51 Cal.3d at p. 983; accord, *Munoz*, *supra*, 138 Cal.App.4th at p. 866.)  A defendant's Sixth Amendment right to counsel of his or her choice is balanced against the countervailing state interest in the orderly administration of justice.  (*Ortiz*, at pp. 982-984; *Lara*, *supra*, 86 Cal.App.4th at pp. 151-153.)  An *untimely* request to discharge retained counsel and obtain new appointed counsel may be denied when it will result in an unreasonable disruption in the orderly process of justice.  (*People v. Turner* (1992) 7 Cal.App.4th 913, 918-919 (*Turner*) [untimely request that will " 'result in . . . "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case" ' " properly denied in court's discretion].)

Requests made on the day of trial when a substitution would, without question, necessitate a continuance, are routinely denied as patently untimely.  (See, e.g., *Turner*, *supra*, 7 Cal.App.4th at p. 919 [denial of request on day of trial proper because late

4

request would have necessitated a mandatory continuance with "attendant further inconvenience to witnesses and other participants"]; *People v. Lau* (1986) 177 Cal.App.3d 473, 479 [same].) That principle applies with greater force in the case of a belated oral request to substitute retained counsel made at the start of a previously scheduled sentencing hearing, as occurred here. Instead of addressing the untimeliness of the oral motion, defendant focuses instead on the trial court's purported failure to make a sufficient inquiry as to his concerns about his retained counsel, and to make express findings that a continuance would amount to an unreasonable delay in the proceedings.

Defendant relies principally on *Munoz*, but the facts there were substantially different. The defendant in *Munoz* wrote a letter to the judge over a week *before* his scheduled sentencing hearing, indicating his desire to discharge his retained attorney and asking for the court to appoint a new attorney for him specifically so he could file a motion for new trial. (*Munoz, supra*, 138 Cal.App.4th at p. 864.) The court discussed the matter with the defendant and his retained lawyer at the scheduled hearing, then trailed the matter several days, and allowed the defendant to submit additional materials detailing his concerns about his lawyer. The defendant submitted an additional six-page letter outlining his concerns. (*Id*. at pp. 864-865.) However, at the next hearing, the court denied the substitution request, essentially incorrectly relying on the need for a *Marsden* showing of incompetence, but then *continued the sentencing hearing another month* on the court's own motion to allow defendant to solicit supporting letters from family and friends to be considered for sentencing. (*Munoz*, at p. 865.)

The *Munoz* court found the record did not support a finding that substitution of counsel would have caused an unreasonable delay in the proceedings, given that the court delayed the proceedings over a month, during which time arguably a substituted attorney could have been appointed and become sufficiently familiar with the case. *Munoz* also cited the trial court's improper reliance on a *Marsden* standard in denying the request, as well as the defendant's detailed explanation of his concerns with his retained lawyer negating any concerns the request was sought solely for delay. (*Munoz*,

5

*supra*, 138 Cal.App.4th at p. 870.)  And, significantly, *Munoz* explains that in most cases where a request to discharge retained counsel is made *postconviction*, as here, the inevitable "delay and public expense" that would accompany the granting of substitute appointed counsel "will militate for denial."  (*Id*. at p. 868.)

Defendant has not persuaded us that this is *not* one of those cases where the inevitable delay and public expense militates against the discharging of retained counsel and appointing the public defender to represent defendant at sentencing.  The proceedings on defendant's oral motion were brief, but the circumstances were plain and uncomplicated.  And, the court's reference to the fact that defense counsel had done a good job at trial does not indicate the court was improperly using a *Marsden* standard, but rather reflects the court's observation that counsel had performed competently at trial and was present and capable to properly handle the sentencing hearing.  We believe the record here adequately supports the court's exercise of discretion.

The sentencing hearing had been scheduled some three weeks earlier in defendant's presence after he agreed to a waiver of time as to the scheduling of the hearing.  The court, the prosecutor, one of the victims (J.M.), and Michael Rodriguez from the Sexual Assault Response Service were all present and ready to proceed as scheduled with the reading of the victim impact statements and sentencing.  Granting defendant's belated request would have mandated a continuance of the hearing, required all those present to reschedule and return to court at a later date, and delayed resolution of the proceedings.  We cannot conclude the refusal to grant the substitution, as well as the continuance that would have been required, amounted to an abuse of discretion.  (*Turner*, *supra*, 7 Cal.App.4th at p. 919, fn. 8 [rejecting assertion that trial court failed to make a finding that substitution would have disrupted the judicial process because it was "perfectly obvious" a substitution granted on the day of trial would mandate a continuance].)

## 2.    The Ineffective Assistance Claim

Defendant further contends he was denied the effective assistance of counsel because his attorney failed to move to sever the charge involving the A.G., from the three charges regarding J.M.  Once again, we disagree.

The burden is on defendant to establish ineffective assistance by a preponderance of the evidence.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 218 (*Ledesma*).)  There are two elements to an ineffective assistance claim.  "[A] defendant seeking relief on the basis of ineffective assistance must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings."  (*People v. Cudjo* (1993) 6 Cal.4th 585, 623 (*Cudjo*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-696 (*Strickland*).)

On direct appeal, this burden can be stringent.  When the record on appeal " ' "sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," *the claim on appeal must be rejected*.'  [Citation.]  A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding.  [Citations.]"  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 (*Mendoza Tello*), italics added; *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [ineffective assistance claim properly resolved on direct appeal only where record affirmatively discloses no rational tactical purpose for counsel's actions].)

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'  [Citation.]"  (*Strickland*, *supra*, 466 U.S. at p. 689.)  Moreover, "prejudice must be affirmatively proved.  [Citations.]  'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . .  The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

7

different. . . . [Citations.] Specifically, '[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' . . . [Citation.]" (*Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)

Defendant's sole claim of error against his attorney is that counsel failed to move to sever count 3 from counts 1, 2 and 4. Penal Code section 954 provides, in relevant part: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts . . . ; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . ." Defendant concedes the four charges against him were offenses of the same class and therefore subject to joinder under Penal Code section 954.

By statute, the four separate counts based on sexual offenses against children in violation of Penal Code sections 288 and 288.7 were properly joined, and therefore defendant "can establish error only on a clear showing of prejudice." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1075; see also *People v. Geier* (2007) 41 Cal.4th 555, 575 (*Geier*).) In order to meet his burden, defendant would have to show a reasonably competent attorney would have moved for severance, the court would likely have granted the motion, and severance would likely have resulted in a more favorable outcome at trial. Defendant has failed to do so.

First, there is nothing in the record indicating why defense counsel did not move to sever the charges and request separate trials for each victim. Therefore, the issue is properly rejected on appeal. (*Mendoza Tello*, *supra*, 15 Cal.4th at pp. 266-267.) However, even considering the argument on its merits, defendant has not persuaded us he was prejudiced by the joinder of the charges at trial so as to establish ineffective assistance of counsel. (*Cudjo*, *supra*, 6 Cal.4th at p. 623.)

Prejudice from joined charges generally arises from the following circumstances: "(1) evidence on the crimes to be jointly tried would not be cross-admissible in separate

8

trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case." ' [Citation.]" (*Geier*, *supra*, 41 Cal.4th at p. 575.)

Cross-admissibility ordinarily dispels any prejudice. (*People v. Stitely* (2005) 35 Cal.4th 514, 531-532.) Count 3 was based on defendant's sexual assault of A.G. when she was around nine years old, including touching her private parts and pinning her up against the wall and placing his exposed penis in her face. Counts 1, 2 and 4 were based on conduct that occurred approximately seven years later with J.M., also when she was about nine years old, and defendant forcibly engaged in sex with her. The evidence of the separate crimes against the two siblings would have been cross-admissible under Evidence Code section 1108 had they not been joined in a single action. (See *People v. Hernandez* (2011) 200 Cal.App.4th 953, 965-966.) "In enacting [Evidence Code] section 1108 the Legislature recognized the ' "serious and secretive nature of sex crimes and the often resulting credibility contest at trial," ' and intended in sex offense cases to relax the evidentiary restraints imposed by [Evidence Code] section 1101 'to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility.' [Citation.]" (*Id.* at p. 965.)

We do not find that defendant's sexual assault on his daughter was so much more egregious as to be likely to inflame the jury into convicting him of the assault on his stepdaughter, or that the case involving his daughter was a "stronger" case than the case involving his stepdaughter, or that either case was "weaker" than the other. Defendant's ineffective assistance claim fails.

**DISPOSITION**

The judgment of conviction is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GRIMES, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.