Filed 1/2/25  P. v. Laughlin CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAYDEN LAUGHLIN,<br><br>    Defendant and Appellant. | F086433<br><br>(Super. Ct. No. BF182094A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Kari Ricci Mueller, and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted Jayden Laughlin (appellant) of premeditated, willful, and deliberate attempted murder (Pen. Code, §§ 664, 187, subd. (a)),[1] three counts of second degree robbery (§§ 211, 212.5, subd. (c)), four counts of assault with a semiautomatic firearm (§ 245, subd. (b)), two counts of shooting at an occupied vehicle (§ 246), and other related offenses. The jury also found true enhancements for the use of a firearm (§§ 12022.53, subds. (b), (c), (d), 12022.5, subd. (a)), acting for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and committing offenses while released on bail (§ 12022.1, subd. (b)). The trial court sentenced appellant to 35 years to life plus 39 years in state prison.

On appeal, appellant raises claims of instructional error, insufficiency of the evidence, and sentencing error. He also contends the trial court erred in denying his request to discharge counsel on the eve of trial. We conclude no error occurred. However, the parties agree, as do we, that the trial court's imposition of two on-bail enhancements pursuant to section 12022.1, subdivision (b) was unauthorized, and we strike one of the enhancements. In all other respects, we affirm.

## PROCEDURAL BACKGROUND

The Kern County District Attorney's Office filed an amended information charging appellant with premeditated, willful, and deliberate attempted murder (§§ 664, 187, subd. (a); count 1), four counts of assault with a firearm (§ 245, subd. (b); counts 2, 16, 17, and 21), three counts of second degree robbery (§§ 211, 212.5, subd. (c); counts 3–5), attempted second degree robbery (§§ 664, subd. (a), 211, 212.5, subd. (c); count 6), six counts of false imprisonment by violence or menace (§§ 236, 237, subd. (a); counts 7–12), misdemeanor providing false information to a peace officer (§ 148.9, subd. (a); count 13), shooting at an occupied vehicle (§ 246; counts 14 and 15), shooting

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

at an inhabited dwelling (§ 246; counts 18–20), making criminal threats (§ 422, subd. (a), count 22), possession for sale of cocaine (Health & Saf. Code, § 11351; count 23), possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 24), possession of an assault weapon (§ 30605, subd. (a); count 25), and participating in a criminal street gang (§ 186.22, subd. (a); count 26).

The information also alleged numerous enhancements and sentencing allegations. As to counts 1 through 12 and 21 through 25, the People alleged appellant committed the offenses for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) As to count 1, the People alleged appellant personally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d)), personally discharged a firearm (§ 12022.53, subd. (c)), and personally inflicted great bodily injury (§ 12022.7, subd. (a)). As to counts 2 through 12 and 14 through 22, the People alleged appellant personally used a firearm. (§§ 12022.53, subd. (b), 12022.5, subd. (a).) As to counts 14 through 26, the People alleged appellant committed the offenses while released on bail. (§ 12022.1, subd. (b).)

Prior to trial, the trial court granted the People's motion to dismiss count 19, and to dismiss the use of a firearm enhancements as to counts 14, 15, 18, and 20. The trial court also granted appellant's request to try separately count 26, the gang allegations, and the on-bail enhancement allegations.

The jury found appellant guilty on counts 1 through 5, 7 through 17, 21, 22, 25, and 26. On count 6, the jury found appellant guilty of the lesser included offense of misdemeanor attempted petty theft. (§§ 664, 484, subd. (a), 488.) On counts 18 and 20, the jury found appellant guilty of the lesser included offense of negligent discharge of a firearm. (§ 246.3, subd. (a).) The jury also found true all the alleged use of a firearm enhancements, gang allegations, on-bail enhancements, and the great bodily injury enhancement.

3.

# FACTUAL BACKGROUND

## I. Riverwalk Park Robberies (Counts 3–12).

On October 19, 2019, a group of six friends were skateboarding at Riverwalk Park after school. They observed a younger skateboarder being harassed by appellant and two other subjects. One of the skateboarders confronted appellant, and they began arguing and pushing each other. Appellant lifted his shirt revealing the handle of a firearm tucked into his waistband. Appellant then ordered the skateboarders to sit down against a wall and demanded their money, phones, and wallets. He approached each of the skateboarders individually and repeated his demand.

Appellant took cash from two of the skateboarders. He took a cell phone from a third skateboarder, looked at it, then threw it back at him and said he did not want it. A fourth skateboarder testified when appellant demanded the password to his cell phone, he told appellant he did not know it. He could not recall whether appellant grabbed his phone and threw it back to him, or only demanded to know the password without taking possession of the phone.

## II. Shooting of J.G. (Counts 1, 2, and 13).

On November 9, 2019, J.G. was walking to his aunt's residence when he saw appellant standing in front of a house with several other people. J.G. heard appellant call out his name, then saw him run into the house. J.G. turned and walked down an alley to try to avoid appellant. He testified he had heard rumors appellant was affiliated with the Warlord Piru Bloods gang and was worried he was trying to "make a name" for himself. Although J.G. was not affiliated with a gang, his older brother was affiliated with the Westside Crips gang, which rivals the Warlord Piru Bloods gang.

About one minute after J.G. turned down the alley, appellant approached him and accused him of "dissing the set." Appellant drew a handgun and pressed it into J.G.'s stomach. Appellant lowered the gun and started to walk away, but then turned and fired

4.

seven shots at J.G. As J.G. ran from appellant, he was shot in the left arm and the right hip. He also found a bullet hole in his hat. He was transported to the hospital and treated for his injuries.

Minutes after the shooting, an officer conducted an enforcement stop on a vehicle that was driving away from the scene of the shooting. Appellant was sitting in the rear passenger's seat. He provided the officer with a fake name and birthdate.

### III.     Shooting at M.O. and His Vehicle (Counts 14–18, 20).

On May 25, 2022, M.O. was driving his SUV with his five-year-old daughter in the back seat. While heading home from a doctor's appointment, he saw appellant's black Audi sedan speed past him and nearly collide with his SUV. M.O. followed the Audi as it turned down a residential street. When the Audi stopped on the side of the street, M.O. pulled behind it and took a photo of its license plate to send to the police. M.O. also took a photo as appellant opened the front driver's side door of the Audi. M.O. drove away, and appellant followed him. M.O. traveled about one block, then made a U-turn to head back toward his house. As M.O. passed the Audi, appellant opened his front driver's side door and fired multiple shots at the SUV. One bullet struck the front grill of the SUV, two bullets struck the front driver's side door, and one bullet struck the rear driver's side door. Bullets also struck the garage doors of two nearby residences.

Officers located seven .40-caliber cartridge casings in the middle of the street. Officers also located two firearm components near the casings – a firing pin and a back plate to a semiautomatic firearm. The casings were swabbed for DNA, and subsequent testing revealed appellant could not be excluded as a contributor.

### IV.     Assault of C.N. (Counts 21, 22, and 25), and Subsequent Investigation.

On June 17, 2022, C.N. was outside of his mother's house when appellant pulled up in his Audi. Appellant pointed a rifle at C.N. and stated he was going to shoot him.

Appellant then "banged on" C.N. and drove away. C.N. was affiliated with the Westside Crips gang.

Later that day, officers executed a search warrant at a residence where appellant was known to stay. Appellant and four other subjects were inside. As appellant and the subjects exited, one of the subjects dropped a bag near the front door. Inside, officers found a loaded assault rifle and a loaded .40-caliber Glock 27 handgun. The Glock 27 was missing its back plate and firing pin. An officer opined that the assault rifle constituted an assault weapon under California law. Inside the residence, officers located 17 grams of cocaine, two digital scales, and packaging material.

The assault rifle and the Glock 27 were swabbed and tested for DNA. Appellant could not be excluded as a contributor to the DNA on the assault rifle. DNA testing on the Glock 27 was inconclusive.

A firearms expert reconstructed the Glock 27 by combining it with the firing pin and back plate recovered from the scene of the shooting at M.O. and his vehicle. The expert test fired the Glock 27 and compared its cartridge casings with the seven cartridge casings recovered from the scene of the shooting, and opined they were all fired by the same firearm.

Appellant's girlfriend testified appellant told her he shot at J.G. and shot at M.O. Appellant also asked her to contact C.N.

## V. Bifurcated Trial on Count 26, Gang Allegations, and On-bail Enhancements.

The prosecutor submitted certified court records showing appellant was released on bail on August 14, 2020.

The People's gang expert testified appellant was an active member of the Warlord Piru Bloods gang. He explained the primary activities of the gang include robbery, carjacking, illegal possession of firearms, assault with deadly weapons, homicide, witness intimidation, criminal threats, and sales of narcotics. Evidence was presented that

members of the gang had committed three predicate offenses, and the expert opined the predicates were committed for the common benefit of the gang. In response to hypothetical questions mirroring the facts of the charged offenses, the gang expert opined that the Riverwalk Park robberies, the shooting of J.G., and the assault on C.N. were committed for the benefit of, at the direction of, or in association with the Warlord Piru Bloods gang.

## DISCUSSION

**I.    The Trial Court's Imposition of Two "On bail" Enhancements Pursuant to Section 12022.1, Subdivision (b) is Unauthorized Because Appellant Was Only Released on One "Primary Offense."  We Strike One of the On-bail Enhancements.**

At sentencing, the trial court imposed two on-bail enhancements pursuant to section 12022.1, subdivision (b). Appellant contends, and respondent concedes, that the trial court could not lawfully impose more than one on-bail enhancement because appellant was only released from custody on one pending case. We accept respondent's concession and strike one of the on-bail enhancements.

### A.    *Background.*

The People filed a complaint on August 13, 2020, charging appellant with offenses related to the Riverwalk Park robberies and the shooting of J.G in case number BF182094A (counts 1–13). The charges were based on two incidents but were filed in a single accusatory pleading. Appellant posted bail the following day and was released from custody.

While the above charges were pending, appellant committed the offenses related to the shooting at M.O. and his vehicle on May 25, 2022 (counts 14–20), and the offenses related to the assault of C.N on June 17, 2022 (counts 21–26). The People initially charged the new offenses in two separate cases, case numbers BF190574A and BF190546A. The trial court subsequently granted the People's motion to consolidate all three of appellant's cases into one information.

The jury found true the on-bail enhancement allegations as to counts 14 through 18, 20 through 22, 25, and 26.  At sentencing, the trial court imposed on-bail enhancements as to counts 16 and 21, which added two additional terms of two years to appellant's sentence.  The trial court explained it believed two on-bail enhancements were appropriate based on appellant's "continued commission of crimes while … still answering to original charges and out on bail."

**B.** *Appellant is only subject to one on-bail enhancement because he was released from custody on a single primary offense.*

Section 12022.1, subdivision (b), provides:  "Any person arrested for a secondary offense that was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years, which shall be served consecutive to any other term imposed by the court."  Section 12022.1 defines a "primary offense" as "a felony offense for which a person has been released from custody on bail."  (§ 12022.1, subd. (a)(1).)  A "secondary offense" is "a felony offense alleged to have been committed while the person is released from custody for a primary offense."  (§ 12022.1, subd. (a)(2).)

Where an offender has been released from custody on one primary offense, the sentencing court may only impose one on-bail enhancement, even if there are multiple secondary offenses.  (*People v. Hurt* (2024) 98 Cal.App.5th 1241, 1250 (*Hurt*); *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1260–1261; *People v. Nguyen* (1988) 204 Cal.App.3d 181, 195–196; *People v. McNeely* (1994) 28 Cal.App.4th 739, 743.)  This is because the on-bail enhancement is based on the nature of the offender, rather than the nature of the offenses.  (*Hurt, supra,* at p. 1249; *People v. Walker* (2002) 29 Cal.4th 577, 589; see *People v. Coronado* (1995) 12 Cal.4th 145, 156.)  Under the determinate sentencing law (§ 1170.1), enhancements based on the nature of the offenses enhance specific counts, whereas enhancements based on the nature of the offender are "added only once as a step in arriving at the aggregate sentence."  (*Hurt,* at p. 1249; see *People v.*

*Tassell* (1984) 36 Cal.3d 77, 90, overruled on another ground in *People v. Ewoldt* (1994) 7 Cal.4th 380, 401.)

However, where an offender commits one or more secondary offenses while released on multiple primary offenses, the offender is subject to one on-bail enhancement for each primary offense. (*People v. Warinner* (1988) 200 Cal.App.3d 1352, 1355–1356; *People v. Mackabee, supra,* 214 Cal.App.3d at pp. 1260–1261.) Under this circumstance, "[e]ach enhancement may be added once in arriving at the aggregate sentence." (*Warinner, supra,* at p. 1356.) *Warinner* observed that although the on-bail enhancement goes to the nature of the offender, "a person released from custody on more than one pending case who commits an offense is more culpable than a person who commits an offense while being out on bail on only one case." (*Ibid.*)

Here, appellant was released on bail on one pending case (case No. BF182094A) when he committed the shooting at M.O. and his vehicle and the assault of C.N. Although this case included multiple counts pertaining to two separate incidents, he is only subject to one on-bail enhancement because he was released from custody on a single case. (*Hurt, supra,* 98 Cal.App.5th at p. 1252.) In *Hurt,* the court explained that for purposes of section 12022.1, "primary offense" refers to release from custody on a pending case, rather than on specific charges within a case. (*Hurt, supra,* at pp. 1250–1252.) *Hurt* reasoned that if the on-bail enhancement could be applied to each count, "the enhancement would become one based on the nature or number of offenses committed in one case, something which the determinate sentencing law does not allow." (*Id.* at p. 1252.) Thus, where an offender has been released on bail in a single case, there is only one violation of "the special custodial trust," even if that case involved multiple offenses. (*People v. McNeely, supra,* 28 Cal.App.4th at p. 743.)

Considering *Hurt's* reasoning and respondent's concession, we conclude the trial court's imposition of multiple on-bail enhancements is unauthorized. We, therefore, strike one of the enhancements. The trial court shall prepare an amended determinate

abstract of judgment showing imposition of only one on-bail enhancement pursuant to section 12022.1, subdivision (b).

We also observe that the original determinate abstract of judgment shows that the on-bail enhancements were imposed as to specific counts. As we explained above, an on-bail enhancement is based on the nature of the offender and does not enhance a specific count. Thus, the amended determinate abstract of judgment shall reflect that the remaining on-bail enhancement is not tied to a specific count.

**II.     The Trial Court Correctly Instructed the Jury with CALCRIM No. 875 that the Crime of Assault with a Semiautomatic Firearm (§ 245, subd. (b)) Does Not Require Specific Intent to Apply Force or Subjective Awareness of the Risk of Injury.**

Appellant contends CALCRIM No. 875 (assault with deadly weapon or force likely to produce great bodily injury) erroneously defines the mental state for assault because the instruction does not require subjective intent to injure the victim. He argues the trial court committed instructional error by giving this pattern instruction to define the elements of assault with a semiautomatic firearm. He seeks reversal of count 17, alleging he was prejudiced because there was no evidence he was aware M.O.'s five-year-old daughter was inside of the SUV when he shot at it. We conclude CALCRIM No. 875, as given, correctly stated the elements of assault with a semiautomatic firearm, and no instructional error occurred.

**A.     *Background.***

The trial court instructed the jury with CALCRIM No. 875, in pertinent part, as follows:

"1.     [Appellant] did an act with a semiautomatic firearm … that by its nature would directly and probably result in the application of force to a person;

"2.     [Appellant] did that act willfully;

10.

"3. When [appellant] acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;

"AND

4. "When [appellant] acted, he had the present ability to apply force with a semiautomatic firearm … to a person.

"Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intended to break the law, hurt someone else, or gain any advantage.

"The People are not required to prove that [appellant] actually intended to use force against someone when he acted."

**B.      *Standard of review*.**

In a criminal case, a trial court must instruct the jury on the essential elements of a charged offense (*People v. Merritt* (2017) 2 Cal.5th 819, 824) and on the general principles of law relevant to the issues raised by the evidence (*People v. Diaz* (2015) 60 Cal.4th 1176, 1189).

We review a claim of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole … [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.)

**C.      *Instructional error did not occur*.**

Section 245, subdivision (b), prohibits "assault upon the person of another with a semiautomatic firearm." Section 240 defines "assault" as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

In *People v. Williams*, our high court clarified the mental state for assault:  "A defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." (*People v. Williams* (2001) 26 Cal.4th 779, 788 (*Williams*).)  This is an objective standard:  the defendant "need not be subjectively aware of the risk that a battery might occur." (*Ibid.,* fn. omitted; see *People v. Trujillo* (2010) 181 Cal.App.4th 1344, 1352 (*Trujillo*).)  Accordingly, *Williams* held that "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur." (*Williams, supra,* at p. 790.)

Relying on *Williams*, *Trujillo* held that a defendant who fired multiple shots at a moving vehicle could be convicted of assaulting both the driver and the back passenger, even though there was no evidence the defendant knew there was a passenger in the car. (*Trujillo, supra,* 181 Cal.App.4th at p. 1348.)  *Trujillo* reasoned that the jury "could have reasonably found that a person with actual knowledge that he is shooting indiscriminately at a moving vehicle would realize that his conduct would directly, naturally, and probably result in a battery to anyone and everyone inside the [car]….  Whether defendant was subjectively aware of such risk or had the specific intent to injure any occupant of the car is irrelevant." (*Id.* at p. 1357.)

Appellant does not dispute that CALCRIM No. 875 correctly articulates the standard set forth in *Williams,* but argues *Williams* was wrongly decided.  He relies on the dissent in *Williams*, which concluded "assault requires either an intent to injure or a subjective awareness of the risk of injury." (*Williams, supra,* 26 Cal.4th at p. 796 (dis. opn. of Kennard, J.).)  He also relies on *People v. Wright,* an opinion from the Third Appellate District that reluctantly followed but criticized *Williams*, asserting that assault requires an intent to commit battery. (*People v. Wright* (2002) 100 Cal.App.4th 703, 705.)

As appellant concedes, we are bound to follow California Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We also observe the Supreme Court subsequently reaffirmed its holding in *Williams* in *People v. Wyatt* (2010) 48 Cal.4th 776, 780–781. We decline to deviate from this binding precedent.

Here, the jury was instructed in CALCRIM No. 875 that appellant must have been "aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone." The instruction also clarified that the People were not required to prove appellant "actually intended to use force against someone when he acted." This instruction comported with the objective standard for the mental state for assault set forth in *Williams*. Accordingly, our independent review reveals the jury was " 'fully and fairly' " instructed on the elements of assault with a semiautomatic firearm, and this claim lacks merit. (*People v. Ramos*, *supra*, 163 Cal.App.4th at p. 1088.)

**D.      *Count 17 was supported by substantial evidence.***

Appellant raises the related claim that the evidence was insufficient to sustain his conviction on count 17 because there was no evidence he was aware M.O.'s five-year-old daughter was inside of the SUV. This claim is predicated on appellant's incorrect interpretation of the law of assault, which we have already rejected. As we explained above, the offender's subjective awareness of the risk that a battery might occur is irrelevant, and there is no requirement that the offender specifically intend to apply force. (*Williams, supra,* 26 Cal.4th at p. 790; *Trujillo, supra,* 181 Cal.App.4th at p. 1357.) Indeed, appellant concedes there was sufficient evidence under the standard articulated in *Williams* and *Trujillo*.

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime …

beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.) "We need not be convinced of the defendant's guilt beyond a reasonable doubt; we merely ask whether ' "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)

Here, the evidence at trial supported the jury's finding that a reasonable person in appellant's position would have realized that the act of firing multiple shots at a moving vehicle would directly, naturally, and probably result in a battery to every person in the vehicle, including M.O.'s daughter. Even if appellant only saw and intended to shoot at M.O., it was reasonable to expect that a vehicle like M.O.'s SUV might contain more than one occupant. (*Trujillo, supra,* 181 Cal.App.4th at p. 1357; see *People v. Riva* (2003) 112 Cal.App.4th 981, 998 [reasonable person would realize bullets fired at a vehicle could strike a nearby pedestrian] overruled on another ground by *People v. Anderson* (2020) 9 Cal.5th 946, 956–957.) Moreover, appellant's bullets struck the SUV's grill, front driver's side door, and rear driver's side door, creating a clear risk to anyone inside. "Whether [appellant] was subjectively aware of such risk or had the specific intent to injure any occupant of the car is irrelevant." (*Trujillo, supra,* at p. 1357.) We, therefore, conclude appellant's conviction for assaulting M.O.'s daughter with a semiautomatic firearm (count 17) was supported by substantial evidence.

## III.    The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Requests to Discharge Retained Counsel on the Eve of Trial.

On the day of trial, and again after jury selection appellant requested the trial court discharge his retained counsel, Roger H. Chien, and either appoint counsel or allow him

to retain new counsel.  The trial court denied both requests as untimely.  Appellant claims this was an abuse of discretion because Chien stated that proceeding to trial would be a financial burden on his law firm because it had only been retained to represent appellant on some of the charges, and because appellant claimed Chien did not have enough time to review discovery with him.  We conclude no abuse of discretion occurred, because the trial court carefully weighed appellant's right to counsel of choice against the lateness of the requests and the " 'disruption of the orderly processes of justice.' " (*People v. Ortiz* (1990) 51 Cal.3d 975, 983 (*Ortiz*).)

### A.    *Background.*

Appellant retained Chien on May 6, 2022, to represent him on the charges related to the Riverwalk Park robberies and the shooting of J.G. (case No. BF182094A).  In June 2022, appellant was arraigned on the complaints for the shooting at M.O.'s vehicle and the assault of C.N. (case Nos. BF190574A and BF 190546A), and attorney Vahan Torosian was appointed to represent appellant on these matters only.  After the trial court granted the People's motion to consolidate on October 13, 2022, Torosian was relieved as counsel, and Chien became counsel of record on all charges.

On the November 8, 2022, trial date, the People filed an amended information combining the charges into a single accusatory pleading.  Chien requested to continue the trial to give him additional time to prepare because he had received new information in the consolidated cases, and the trial court granted the request.  On the January 17, 2023, trial date, Chien answered ready, but the matter was trailed to February 1, 2023.

Chien answered ready for trial on February 1, 2023, and the matter was sent out for trial.  Once in the trial department, Chien stated he was ready, but "with the caveat" that appellant indicated he wished to discharge Chien as counsel.  Appellant stated he only retained Chien to represent him on the first two incidents, and he did not trust Chien to represent him on the latter two incidents because he had not had enough time to meet

15.

with him and review the discovery. Appellant also complained that Chien told him if he goes to trial, "we are basically going to lose."

Chien confirmed he was ready and able to represent appellant on all charges at trial, and that he had been given sufficient time to obtain and review discovery. He noted, however, that proceeding to trial is "[f]inancially … kind of a burden" on his law firm because it had not been paid to represent appellant on the latter two incidents.

The prosecutor objected to a continuance to allow appellant to obtain new counsel, contending Chien was timely provided with all discovery, the trial had previously been continued, and the defense announced ready at the last trial date. The prosecutor also expressed concern that several of the victims and witnesses have moved out of state.

The trial court denied the request to discharge Chien as untimely, reasoning the matter was on for trial, Chien represented he was ready for trial, appellant could have but failed to request discharge at an earlier time, and the People were objecting to a continuance.

Three weeks later, after the jury was sworn and prior to opening statements, appellant renewed his request to discharge Chien. Appellant reiterated his complaint that Chien told him he would be convicted at trial and expressed frustration that his case had not be resolved by way of plea bargain. He requested additional time to retain a new lawyer, or to be referred to the indigent defense panel.

Chien responded that he had made numerous attempts to resolve the case prior to trial, but the prosecution was unwilling to negotiate. The prosecutor confirmed that his office was unwilling to make or accept a plea offer given the gravity of appellant's alleged conduct. Chien also stated he was afforded sufficient time to prepare for trial and would be able to make appropriate strategic decisions in the best interests of his client.

The prosecutor objected to any continuance to obtain new counsel, noting that several witnesses have moved out of the area, and that travel accommodations had been

made to procure their testimony. Chien agreed that if the discharge request was granted, it would take new counsel approximately six months to prepare for trial.

The trial court observed appellant's complaints appeared to be based on his dissatisfaction with the criminal justice system, including his inability to resolve his case without going to trial, the severe penalties he was facing, and Chien's assessment of his chance of succeeding at trial. However, these concerns were insufficient to warrant a continuance on the eve of trial to obtain new counsel. The trial court reasoned Chien was a competent attorney who was ready and prepared for trial. The trial had a "slow start," which afforded appellant and Chien several weeks to review discovery before the presentation of evidence. The case had been on the trial calendar for weeks, and defense counsel previously answered ready. A jury had already been selected, and continuing the case at this point would be a "major disruption" for the victims, witnesses, and the court. Accordingly, the trial court denied the renewed request to discharge Chien as untimely.

## B. *Standard of review.*

"The right to retained counsel of choice is—subject to certain limitations— guaranteed under the Sixth Amendment to the federal Constitution." (*People v. Verdugo* (2010) 50 Cal.4th 263, 310.) A criminal defendant has the right to discharge retained counsel with or without cause. (*Ortiz, supra,* 51 Cal.3d at p. 983; *People v. Stevens* (1984) 156 Cal.App.3d 1119, 1127.) However, this right is not absolute. (*Ortiz, supra,* at p. 983.) "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which [this] right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time." ' " (*Id.* at pp. 983–984.) Thus, a trial court "may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will

17.

result in 'disruption of the orderly processes of justice.' " (*Id.* at p. 983; see *People v. Maciel* (2013) 57 Cal.4th 482, 512; *People v. Verdugo, supra,* 50 Cal.4th at p. 311.)

We review a trial court's denial of a request to discharge counsel for abuse of discretion. (*Ortiz, supra*, 51 Cal.3d at p. 984; *People v. Lopez* (2018) 22 Cal.App.5th 40, 47.) A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, [citation], and against the demands of its calendar." (*United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 152; see *People v. Verdugo, supra,* 50 Cal.4th at p. 311.) Nonetheless, the trial court "must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " (*Ortiz, supra*, 51 Cal.3d at p. 984.)

### C. *No abuse of discretion occurred.*

Based on the record before this court, we conclude the trial court acted within its discretion in denying appellant's discharge requests. Chien was retained May 2022, assumed representation on all counts in October 2022, and answered ready for trial twice. Despite this, appellant did not request to discharge Chien until February 1, 2023, the day of trial. Under these circumstances, the trial court was justified in concluding the discharge requests were untimely.

In addition to the lateness of the requests, the trial court also properly considered whether granting a continuance to allow appellant to obtain new counsel would result in " 'disruption of the orderly processes of justice.' " (*Ortiz, supra,* 51 Cal.3d. at p. 983.) At the time the requests were made, the charges relating to the shooting at M.O.s vehicle and the assault of C.N., had been pending for over seven months, and the charges relating to the Riverwalk Park robberies and the shooting of J.G. had been pending since 2019. The People were ready to proceed, had procured the attendance of witnesses, and had made travel accommodations for those who had moved out of state. Chien estimated new

counsel would need at least six months to prepare for trial. This estimate appears reasonable, given that the case involved 26 charges based on four separate incidents, and involved numerous victims and witnesses. As the trial court observed, such a delay would undoubtedly have been a "major disruption" for victims, their families, witnesses, and the court system.

Appellant primarily relies on Chien's representation that serving as trial counsel would be a financial burden on his law firm. However, he fails to articulate how this affected his right to effective representation. Chien became counsel of record on all charges months before trial, and he announced ready for trial twice without raising the issue of lack of payment. He only claimed representation at trial would be "kind of a burden" when responding to appellant's discharge request. Moreover, Chien repeatedly confirmed he was ready and able to represent appellant on all charges, regardless of this purported financial issue. Appellant does not point to anything suggesting Chien's representation was deficient, and nothing in the record suggests he was not adequately prepared. (See *People v. Maciel*, *supra*, 57 Cal.4th at p. 513 [noting absence of inadequate representation by retained counsel].)

Appellant also argues the request to discharge Chien should have been granted because Chien did not have sufficient time to review discovery with him pertaining to the latter two incidents. But the trial court explained that the trial schedule gave appellant several weeks to review discovery with Chien before the presentation of evidence. This accommodation was sufficient to address appellant's concern.

We recognize that retained counsel may be discharged without cause, and a criminal defendant is "not *required* to demonstrate inadequate representation or an irreconcilable conflict." (*People v. Maciel*, *supra,* 57 Cal.4th at p. 513.) However, a trial court may "properly consider the absence of such circumstances in deciding whether discharging counsel would result in disruption of the orderly processes of justice." (*Ibid.*) Here, the trial court found that appellant was represented by competent counsel who was

19.

adequately prepared to go to trial.  Given the lateness of appellant's discharge requests, the trial court reasonably determined that appellant's right to his counsel of choice was outweighed by the significant disruption to the judicial process.  We, therefore, conclude the trial court did not abuse its discretion in denying appellant's requests to discharge Chien, and this claim is without merit.

## IV. Appellant Forfeited His Claim that the Trial Court Should Have Dismissed His Enhancements Pursuant to Section 1385, Subdivision (c)(2) by Failing to Request Dismissal Below.

Appellant claims the trial court erred by failing to dismiss his enhancements at sentencing pursuant to section 1385, subdivision (c)(2).  We agree with respondent that the claim is forfeited because appellant did not request the trial court dismiss enhancements on this ground.

### A. *Background.*

Appellant was sentenced to 35 years to life plus 39 years in state prison.  His sentence included, as to count 1, a 20-year use of a firearm enhancement pursuant to section 12022.53, subdivision (c), and as to count 3, a 10-year use of a firearm enhancement pursuant to section 12022.53, subdivision (b) and a 10-year gang enhancement pursuant to section 186.22, subdivision (b)(1).  His sentence was also enhanced by two on-bail enhancements pursuant to section 12022.1, subdivision (b).

At sentencing, defense counsel requested the trial court strike all enhancements and sentencing allegations "in the interest of justice" pursuant to section 1385, subdivision (a).  The request was based on certain mitigating factors, including that appellant was a juvenile when he committed the Riverwalk Park robberies and the shooting of J.G., and purported evidence of provocation and self-defense.  The defense did not request the trial court dismiss enhancements pursuant to section 1385, subdivision (c)(2).  The People opposed the request, contending dismissal of enhancements was

unwarranted because the evidence at trial established appellant posed a serious risk of danger to the public.

Prior to pronouncing judgment, the trial court explained it had considered mitigating factors, including appellant's youth and limited criminal record, and various aggravating factors found true by the jury. The court noted it had considered as mitigating factors that application of the enhancements found true by the jury could result in a sentence over 20 years, and that multiple enhancements were alleged in a single case. (See Cal. Rules of Court, rules 4.423(b)(10) and 4.423(b)(11).)

As to count 1, the trial court elected to stay the use of a firearm enhancement pursuant to section 12022.53, subdivision (d), and impose the lesser enhancement pursuant to section 12022.53, subdivision (c). Pursuant to section 1385, subdivisions (a) and (b)(1), the trial court struck the punishment for the use of a firearm enhancements on counts 4, 5, 17 and 21, and for the gang enhancements on counts 4, 5, and the gang enhancements on counts 4, 5, 10 through 12, 17, and 21. The remaining enhancements were either imposed or stayed.

**B.** ***Applicable law – section 1385, subdivision (c).***

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to add subdivision (c), which provides, in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [listed] mitigating circumstances ... are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(1)–(2).)

21.

Appellant claims the following two enumerated mitigating circumstances listed in section 1385, subdivision (c) are applicable here and warranted dismissal of the enhancements: section 1385, subdivision (c)(2)(B) provides: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed;" section 1385, subdivision (c)(2)(C) provides: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed."

### C. *The claim is forfeited.*

Under section 1385, a criminal defendant has "the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) However, "complaints about the manner in which the trial court exercises its sentencing discretion … cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) Thus, "any failure on the part of a defendant to invite the court to dismiss under section 1385 … forfeits [the] right to raise the issue on appeal." (*People v. Carmony, supra,* at pp. 375–376; see *People v. Coleman* (2024) 98 Cal.App.5th 709, 724.)

Appellant only requested the trial court dismiss enhancements in the furtherance of justice pursuant to section 1385, subdivision (a). This was insufficient to preserve the section 1385, subdivision (c)(2) claim on appeal, because appellant did not request dismissal on this specific ground. (See *People v. Gonzalez* (2003) 31 Cal.4th 745, 755; *People v. Scott* (1978) 21 Cal.3d 284, 290.) As a result, the trial court had no occasion to exercise its discretion in accordance with section 1385, subdivision (c)(2). Accordingly, the claim is forfeited.

We recognize the trial court stated it had considered as factors in mitigation that multiple enhancements were alleged, and that application of the enhancements could result in a sentence over 20 years. This does not impact our conclusion that the claim is

forfeited. While these circumstances are listed in section 1385, subdivisions (b)(2)(B) and (b)(2)(C), they are also factors in mitigation under California Rules of Court, rules 4.423(b)(10) and 4.423(b)(11). Thus, the trial court properly considered these factors in determining the appropriate sentence. Nothing in the record suggests the trial court considered, on its own accord, whether to dismiss enhancements pursuant to section 1385, subdivision (c)(2). (See *People v. Lee* (2008) 161 Cal.App.4th 124, 129 [No sua sponte duty to consider dismissal under section 1385].)

Appellant does not dispute that he did not request to dismiss enhancements pursuant to section 1385, subdivision (c)(2), but argues appellate forfeiture is inapplicable because his sentence is unauthorized. According to appellant, dismissal is mandatory where the mitigating circumstances in section 1385, subdivisions (c)(2)(B) and (c)(2)(C) are present, and therefore imposition of the enhancements was unlawful.

We disagree. "[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*People v. Scott, supra,* 9 Cal.4th at p. 354.) A sentence is "unauthorized" if it "could not lawfully be imposed under any circumstance in the particular case." (*Ibid.*) But dismissal pursuant to section 1385, subdivision (c)(2) is not mandatory. A trial court is not obligated to dismiss an enhancement if it finds dismissal "would endanger public safety." (§ 1385, subd. (c)(2); see *People v. Cota* (2023) 97 Cal.App.5th 318, 337; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297.) Moreover, our high court recently held in *People v. Walker* that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029; see *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)

Because dismissal pursuant to section 1385, subdivision (c)(2) is subject to the trial court's discretion, the unauthorized sentence exception is inapplicable. (See *People*

*v. Scott, supra,* 9 Cal.4th at p. 354.) We therefore conclude appellant forfeited his claim that the trial court should have dismissed enhancements pursuant to section 1385, subdivision (c)(2) by failing to request dismissal below.

## **DISPOSITION**

One of the two on-bail enhancements imposed, pursuant to section 12022.1, subdivision (b), is stricken. The trial court shall prepare an amended determinate abstract of judgment reflecting the imposition of only a single on-bail enhancement. The amended determinate abstract of judgment shall also reflect that the remaining on-bail enhancement is not tied to a specific count. The trial court shall then forward the amended determinate abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.

LEVY, Acting P. J.

WE CONCUR:

PEÑA, J.

SNAUFFER, J.

24.